Case number 23-3069, United States of America v. John Marone Nassif, Ms. Fussell for Appellant, Mr. Cahill for Appellant. Good morning. You may proceed when you're ready. Good morning, your honors, and may it please the court. My name is Melissa Fussell and I represent Mr. Nassif. The First Amendment issue is before the court because in 1967, driven by a desire to stamp out civil rights protests, Congress hastily passed legislation banning parading, picketing, and demonstrating in the Capitol buildings over objections that lack the authority to constitutionally do so. That law, now 5104 E2G, is both unconstitutionally vague and overbroad. First, E2G is unconstitutionally vague. It's uncertain, meaning chills-free exercise and invites arbitrary enforcement. The government has exploited E2G's ambiguity by selectively advancing contradictory interpretations. This past May, opposing a motion for acquittal in United States v. Ballinger, the government argued that E2G should be construed literally to include even non-disruptive expression, like silent reproachful presence or just simply showing up at the focal point of a person's beliefs. But below, it adopted a contrary position, demonstrating means engaging in disruptive conduct. And now, the government argues that E2G prohibits demonstrating of the type that would tend to disrupt the orderly business of Congress. It doesn't tell us what it means by the type of disruption, how general that is, what that might include, whether that refers to topic or time or number of people. And it doesn't tell us what it means by the orderly business of Congress, although it apparently means something that takes place when Congress is not in session. It doesn't tell us whether a minimal disruption is sufficient or what even it means by disruption, something more extreme like an obstruction or an impediment or just simply a distraction. Ms. Fussell, what if we read demonstrate in the context of a prohibition on picketing, parading, and demonstrating to denote showing up at the Capitol for the purpose of expressing support or disapproval for an identified action or point of view? So the reason for being there to bear witness to one's objection or support, why isn't that the most natural reading? And in what way does that conflict with the government's position here? Yes, Your Honor. So if I understand the way you've defined it correctly, I think that's exactly what it means, to show up at the Capitol buildings with the intention of expressing some kind of viewpoint. And I think that's blatantly unconstitutional. So the interpretation that the government advanced most recently, and we'll have to see what interpretation they advanced today, but it was that it prohibits demonstrating of the type that would tend to disrupt the orderly business of Congress. The definition Your Honor supplied didn't have any kind of component like that would tend to disrupt. Well, so I'm not sure that I read the government's position to define demonstrate as what would tend to, but more that that's their description of the interest behind this provision. So they do have, as you point out ably in your brief, there's already a prohibition on acting disruptively in the Capitol. But the Capitol has a lot of visitors throughout the year, and even more so Washington, D.C. has thousands of demonstrations every year. Why is it not constitutionally permissible for the Congress to maintain the And to prohibit an additional category of visitors, people who are not there for other purposes, but would only be there because they wanted that to be a stage for their picket protest or demonstration, and simply to say that the capacity would be really strained if we opened for that kind of activity. And so there's a tendency, we can't say, we're not turning our interest on every single one of these being disruptive, nor honestly could they, because they allow similar-sized groups for other purposes. But it's reasonable for them to say this category of activity, which people are constitutionally entitled to engage in outside, just would overwhelm the ability of the Congress to do its work if we invited that in. Why isn't that constitutionally tenable? Yes, Your Honor, so as a threshold matter, we would argue that portions of the Capitol buildings are public forum, but even in a non-public forum, the prohibition must be reasonable in light of the purpose served by the forum. It's not enough to be rationally related to a legitimate government interest, as this Court made clear in Price v. Garland. But what if it's not a public forum at all? Yes, Your Honor, so if it's not a public forum at all, then it still must be reasonable in light of the purpose served by the forum, and it's not enough for it to just have a rational relationship to a legitimate government interest. Well, if it's reasonable in light of the purpose of the forum, which is to conduct the business of Congress, and we know that were it opened to parading, picketing, or demonstration, there would be very high demand for that use, why as a matter of security, of potential for disruption, crowding, why isn't that enough of a governmental interest? Yes, Your Honor, and again, it's important that it's reasonable in light of the purpose served by the forum, which is legislating. So the function of the forum, even if it's a public forum, is to provide access to the people that elected our members of Congress. So demonstrating is really essential to the purpose of the forum. And so we're not saying that Congress doesn't have the ability to regulate crowd control, or that they can't limit the number of people in an area at a certain time, or that they can't limit noise. Of course they can limit those things. However, as the Supreme Court said in Minnesota Voters Alliance v. Mansky, the government has to be able to articulate some basis for what stays in versus what comes out. But you can petition the government without parading, picketing, or demonstrating, right? Correct, Your Honor. There are other ways to petition the government. However, the fact that you can use your First Amendment rights in one place is not a basis the Supreme Court has set. No, I'm saying you can petition the government inside the Capitol building by meeting and speaking with the legislators or their staff without parading, picketing, or demonstrating. Respectfully, Your Honor, it's not at all clear that that's the case. So the government opportunistic... You're telling me that this statute keeps a lobbyist or keeps a farmer from Iowa from going into the Capitol and speaking to staffers? Well, Your Honor, if the government's argument in the United States v. Ballenger is to believe, yes, they argue that demonstrating need not be organized or an outward conveyance of view, and that it includes even silent and reproachful presence, as well as merely showing up at a place that was the focal points of their beliefs, regardless of how quiet or peaceful they are. And... If we read it in the... Sorry, I didn't mean to interrupt. You can finish. No, go ahead, Your Honor. So if we read it as demonstration being akin to picketing or parading, and to exclude, as Judge Wilkins suggests, people who are there to meet with people by appointment, to present views, and that kind of thing, then we're really saying people who are there only for the purpose of standing, bearing witness, even silently, yes, but that sort of create this additional population, additional reason to visit the Capitol. If that's what the statute is aimed at, then I'm not sure I see your rebuttal point to that. Your Honor, our point is that banning that would be unconstitutional because it's not reasonable to single out First Amendment expression, peaceful, quiet, non-disruptive First Amendment expression in particular, for the sole basis that it's First Amendment expression. So to hear the government tell it, as long as Congress is not in session, a person can engage in all manner of disruptive conduct in the Capitol buildings as long as they don't engage in First Amendment expression while doing it. And it sounds like the definition that honors are offering is that if you come for the specific purpose of expressing yourself and making your views heard, that that's illegal. And that simply cannot be the case under the Constitution. That wouldn't be reasonable in any forum. So you're focusing on the most extreme, maybe minimal is the better word, minimal version of demonstrations in your responses to these holding up a fist, but also all other forms of demonstration. And when we're doing a reasonableness analysis, not narrow tailoring, if you assume it's a non-public forum, why is that type of over-inclusiveness a constitutional problem? Isn't that exactly the difference between reasonableness and narrow tailoring? Respectfully, no, Your Honor. So the government in its briefing approaches it as something like a rational basis review, which is different. So reasonable in light of the purpose served by the forum, the Supreme Court has said you have to be able to articulate why. Give a reason why you're not banning this, but you are banning that. And so it's not reasonable if your concern is preventing disruptions of the orderly business of Congress. It's not reasonable to say we're only going to punish the First Amendment expression that does that. We're going to permit all manner of other disruptions as long as Congress is in session. There's a separate statute that prohibits disruption. Correct, Your Honor. But as the government points out in its brief, that only applies while Congress is in session. So the government has argued that there's a gap in the statutory scheme. While Congress is in session, subsection D prohibits disruptive conduct. But while Congress is not in session, then there is nothing in that specific statute to prevent any kind of disruption. And that's where the need, the government argues, for the demonstrating provision comes in. However, if Congress is aiming to prevent disruptive conduct, and they're concerned with Congress being able to do other orderly business, it is not sensible at all to only punish the types of disruptive conduct that the Supreme Court says are worth protecting in spite of their risk for disruption, and maybe even because of. Because as the Supreme Court has made clear repeatedly, the free exercise of speech is most important sometimes when it creates a condition of unrest or when it questions people's going into the Capitol buildings. If you go into that visitor center, there are signs explaining how you can participate in your democracy. And one of the things that it invites you to do is to come to Congress and talk to your congressperson and make your views heard. A statute that might prohibit that, and at least some of the government's interpretations, as along with the Capitol Police's interpretations, and even the definition of at least suggest that that would be prohibited. And that type of chilling of free exercise. I think where you're losing me is that if the choice is between demonstrating on the sidewalk outside of the Capitol or demonstrating inside the Capitol building, if you give that to 100 different groups that seek to come to Washington and demonstrate, 100 out of 100 would pick demonstrating inside the Capitol building. And I think that at least where I see your argument running into a problem under a reasonableness analysis is that isn't it reasonable for we can't get our work done if there are going to be dozens, if not hundreds, of demonstrations occurring in the halls, in everywhere, every day on a daily basis. So your honor, I would say that's not a reasonable way of preventing that kind of disruption. So what would be a reasonable way, perhaps a permitting scheme, much like they have for the Capitol grounds elsewhere, we're not arguing that you just need to open the floodgates and let anyone who wants to have some sort of large protest in the rotunda go through. Of course that's not the case. But what we're saying is that this statute doesn't offer any kind of guidance. The government can't decide what it means. The Capitol Police can't decide what it means. And district courts can't decide what it means. No one can figure it out. So as it stands, then anyone who wants to tell them what it means today. Well, your honor, if the court can ascertain the meeting, then that's absolutely correct. However, what the court is not permitted to do is rewrite the statute. If there's not a basis for concluding with that, that there's some kind of narrower meeting than what everyone else has advanced, then the court can rewrite the statute. But regardless, there are, of course, reasonable ways to limit that kind of activity in the Capitol building. But here it would appear, and the government has argued in other cases, opportunistically, that it would reach even a lone person walking into the Capitol and silently having a reproachful presence there. So that's absolutely not reasonable. Can I just ask a procedural question? It appears that you concede in your brief, I think it's at page 15, that you did not make the argument below that the Capitol buildings indoors were public forum. And you didn't make the argument in your opening brief that they are a public forum. Am I right about those two things? Could you repeat the second one that we didn't make the argument in our opening brief? Yeah, I don't see where you ever argued that they were a public forum or didn't explain how they were a public forum. So, Your Honor, I believe that we did, yes. On page 15, the traditionally publicly accessible portions of the Capitol grounds are a public forum and the government failed to meet its burden of showing otherwise. And we specifically mentioned the Capitol retentation. Okay, yeah, I misspoke. I guess my point is, is that you didn't argue it below, right? Correct, Your Honor, and that's, sorry. And you didn't seek to present any evidence or make any record on that point below. Am I right about that? That's correct, Your Honor. Okay. And the reason why is because, so one is the government's burden. So we... Why is it the government's burden? We presume a statute is unconstitutional. You have the burden of showing that it's either vague or overbroad. So wouldn't part of that burden be to show that it's a public forum rather than a non-public forum? Your Honor, this circuit, this court said in Lederman that the government bears the burden of showing, one, that it's a public or non-public forum, and two, the tailoring or the reasonable relationship. And the government... That's on a motion to dismiss where the government has the burden of establishing that it's entitled to a motion to dismiss, right? Your Honor, respectfully, no, the Lederman case wasn't talking about the burden on a motion to dismiss. They were talking about the burden in the forum analysis, which the government has conceded that it does bear the burden of proving the constitutionality. All right, but it was in the context of the government making a motion to dismiss in a civil case. That's correct. However, there are... Perhaps more specific to Lederman, where it's a traditional public forum rather than a limited or designated public forum, that's established. And if there's some restriction on that, you know, particular part of Sidewalker Street, then it's the government's burden. But my understanding is that it's always been the plaintiff's burden, at least to come forward with a reason to think that a designated or limited public forum is in fact so designated or so limited. And it may be by tradition or custom, it may be by specific declaration, but there has to be some reason that the person who's subject to the law believes that it's been opened. So I actually think that... I mean, I'd be interested in any precedent or authority that you have on that, but my understanding of the case is that it is actually the burden of the member of the public who's subject to the law in that context. Your Honor, we haven't seen any I can't speak to that, but I can say that the Supreme Court has held that when the government restricts speech, it bears the burden of approving the constitutionality of its actions. That's United States v. Playboy Entertainment Group. But regardless of who bears the burden, the reason the forum analysis was not addressed below is because, frankly, we don't think that is the appropriate analysis at all. We don't think that that's necessary to reach under the analysis, which we recognize that we do bear the burden on. The government did not address directly the forum analysis either, other than some brief sites to cases that mentioned it. It was not something that was at issue at the motion to dismiss stage below. So are you saying that you're willing to rest your case on the assumption that it's not a designated or limited public forum, but that it's a non-public forum, but in your view, it is still a constitutional violation? So, Your Honor, we would not concede that it's not a public. We think there are large portions of it that do meet the public forum standard. They're publicly accessible. They were traditionally designed as a meeting place, like the rotunda. They were historically used as those things, and people have been allowed to express themselves. However, yes, even in a non-public forum, we believe that it's unconstitutional because it's not reasonably related to the purpose of the forum, which is representing the interests of the people of the United States. You said that at least some portions were historically used for public gathering and discussion. Is there evidence of that in the record? Not in the record, Your Honor, because again, it did not come up below the government. Neither we nor the government argued it was about overbreadth until the district court made that decision. However, we would be happy to provide supplemental briefing on that if the court decides. I think certain things, you know, the court could certainly take judicial notice of, such as the fact that the rotunda was designed to be a public meeting place that, you know, is just kind of historical information about the Capitol that we think the court could take judicial notice of. Can I ask a methodological question about, you mentioned how the forum analysis and overbreadth interrelate, and one view is that under the overbreadth doctrine, it's your burden to come forward and show that a substantial number of applications are unconstitutional, right? And then how can we answer whether any application is unconstitutional without doing the forum analysis? Aren't they inextricably connected here? Yes, Your Honor, this is a very good question. And, you know, we exhaustively searched the case law for a good answer on this. And, unfortunately, I don't think there is one. There are cases that go straight overbreadth. There are cases that incorporate the public forum analysis into the overbreadth analysis. And it's further confusing because there are cases that say the government bears the burden on the forum analysis, but yet we bear the burden on overbreadth. Still, I think most of the time they have, really probably all the time, they have the same answer. I think whether you're asking whether it's overbroad because it chills substantial amount of speech or whether it's reasonable in light of the purpose served by the forum, I think those answers are pretty much always going to be the same. So I don't know that the relationship has an impact on the decision. But, unfortunately, I don't think the case law provides a good answer for what exactly that interrelationship is. And I will also say that I think here in a facial challenge, the forum analysis is very clumsy because we have all of these different, the Capitol building is a broad location. We have many different locations. And in a facial challenge, we can't ask where, what specific portion we're talking about. And the public forum analysis kind of demands that we do. So when you have this broad location with all these different forums, it makes that analysis unclear. If you find that one part is a public forum, do you apply that analysis? Do you apply a non-public forum analysis? So that's a long explanation. I have a question just going to your sentencing argument. I believe that there was a chart that you submitted to Judge Bates as part of your sentencing argument comparing different cases in support of the argument that there was a penalty for going to trial. I don't think that that's in the record. Your Honor, we could certainly provide the court with that if it would like. In terms of the nature of the cases included on the chart, did the, I don't know if you know this standing here, but did the guilty plea comparator cases have the same calculated guideline range as the range calculated for Mr., is it Nassif or Nassif? Mr. Nassif, Your Honor. And standing here, I don't want to say one way or the other. I'm not totally sure, but we can certainly provide the court with supplemental briefing on that if that's important to the court. I have a question about your vagueness argument. My understanding is that your arguments below and here are essentially facial challenges to the statute. They're about the outer limits of what it covers and not about Mr. Nassif's conduct in particular in this case. Is that right? Yes, Your Honor. They're both facial challenges. Okay. And so I realize the government didn't cite this case and this will be a question I have for them, but the Supreme someone whose conduct is clearly prescribed cannot complain of the vagueness of the laws applied to the conduct of others. And that's just a basic application of the general principle that you don't get to rely on the rights of others. And I'm just curious if you, again, realizing it wasn't cited in the briefs, if you have a response to why that doesn't foreclose your vagueness claim here. Yes, Your Honor. There are a couple of reasons. One, there's some, there's some question after, um, uh, Damiah and Johnson, which Johnson was cited in our brief, um, whether that still applies. It was, so there's some, there's some circuit court cases that say that it was dicta. The other thing is, is that this circuit has made clear that that, um, that, uh, Holder versus humanitarian law project is not controlling whenever we're talking about anything other than issue. Then there's a question of, well, can one person who did have fair notice complain about fair notice as applied to others? However, in the first amendment contact context, whenever you're dealing with chilling effect, um, as it relates to vagueness or whenever you're dealing with arbitrary enforcement, which is our primary position here, that Holder versus humanitarian law project, um, language does not, it would not apply here. It would not reach us. Okay. So that's the Act Now case. That case involved a pre-enforcement challenge and it explained essentially you, you can't really conceive of an as applied standardless enforcement challenge in the context of a, of a, uh, pre-enforcement challenge, but you can very much conceive of what that would look like here, right? Mr. Nassif would say, it is so unclear whether my conduct was a demonstration that I was subject to the discretionary whims of the government. And that argument would be the sort of as applied analogy to what Holder seems to require. And I'm just troubled by the fact it doesn't seem like we have that kind of argument here. Yes, Your Honor. So, um, although, um, the Act Now case was a pre-enforcement challenge, what really, I think the, the reasoning is getting at is that it is very, it's fundamentally different to talk about fair notice and arbitrary enforcement. And that's especially true in the First Amendment context, because the main concern there is that it's going to have a chilling, a chilling effect on others. And here where you have the government just shifting his position at almost every turn, I mean, at every stage in this case, they have changed it to something different. And where you have the Capitol police having these turn on a dime when they need to, that, um, you know, is just manifestly arbitrary. And it certainly would lead to a chilling effect in arbitrary enforcement. So I think, even though I do understand Your Honor's concern about, um, you know, it not being an as applied concern here, I think that the reasoning, um, in the Act Now case, and I think also in D.C. District Court case, United States v. Ague, I don't know if I'm pronouncing that right. I think it was Judge Pillard's opinion. So, um, Ms. Fussell, we will give you some time for rebuttal. Thank you, Your Honor. Good morning, Mr. Cahill. Good morning, Your Honors. May I proceed? Timothy Cahill for the United States. May it please the Court. I'd just like to begin by addressing and rebutting a point that came up repeatedly during Appellant's argument, this idea that the government has made inconsistent representations on its position. We submit that that simply isn't supported by the records in the cases below. I would point out that in the Ballinger case, which was cited multiple times, uh, the dispute was on about whether or not conduct had to be, quote, or destructive in order to violate the statute. And the government's position was that it was not, that it's not inconsistent with the position we've taken here or elsewhere. And many of the other claims of inconsistencies are based on conflating what we submit are two completely discrete types of elements. One is the, uh, excuse me, perspective question of the nature of conduct, whether or not it is of the nature to tend to disrupt. Uh, the second is a retrospective question, whether it was convicted of 1752A2 requires proof of both of those things. The 5104 misdemeanor, um, statutes do not. And so a lot of the claims of inconsistency are based on cherry picking statements that relate to different elements in different statutes. And I wanted to clear that up before moving on to some of the other arguments. How does the government, uh, understand the meaning of disrupt just as a matter of, of statutory text in context? So the, and to, to clarify, Your Honor, I'm sorry, not disrupt, demonstrate. I'm sorry. I misspoke. Certainly, Your Honor. So we believe that both the text of this statute and the legislative history support reading demonstrate in this statute as referring to demonstrations that would tend to disrupt the orderly business of Congress. And we would point to the Bronstein case. I recognize that that was a vagueness challenge, but in terms of statutory interpretation, it's highly instructive here. It involves a, um, the question of the meaning of the word oration and also the word harangue in the context of the Supreme Court's buildings and grounds. And this court looked in the text just like doing a statutory interpretation to, to three sources. One were the surrounding statutory terms, which here in the actual provision at issue include parading and picketing, which informs what demonstrate means. And it also, uh, is relevant that in the surrounding provisions, there's prohibitions on loud threatening or abusive language. I would note that that exact phrase was also present in the statute at issue in Bronstein and this court pointed to it as evidence that the statute was concerned with disruptive conduct. In Bronstein, this court also looked at the title of the statute as informing the context. Here, the title of the statute is disorderly, violent entry and disorderly conduct. It looked at the limit. Oh, I'm sorry, Your Honor. Oh, I thought you were about to speak. I apologize. Um, it also looked at the limited location where the statute applied in that case, just the Supreme Court's buildings and grounds here, just the interiors of the Capitol buildings. So for all of those reasons, just applying ordinary principles of statutory interpretation, we believe that that would be the proper way to interpret the scope of the statute. So what would be the operative facts that would allow a member of the public to know that something is a demonstration that tends to disrupt? Is it noise level? Is it size of the group? Is it something else? If I want to go with four friends and hold a quiet vigil, standing to the side of any business being conducted, passing through the rotunda, is that a demonstration that's prohibited or not? So I would submit that on its face, that would appear not to be prohibited, but it's all very context-dependent. If that was happening in the doorway of a congressperson's office, maybe it would be. But that's a factually specific question that in the first instance could be determined by a judge or a jury. I would note that in the 5104 cases that have gone to jury trials, the government has proposed and oftentimes jointly proposed with the defense jury instructions that have defined the term demonstrate in just this way. And in any statute, at its margins, there's going to be factual determinations as to whether or not the terms of that statute apply. And if there are particular cases or particular circumstances where a conviction raises concerns about whether it's infringing, going too far to infringe on constitutional rights, that's where as-applied challenges come in. But we also have a notice problem or at least a question raised about it. And so what is the difference between conduct that would tend to disrupt and conduct that disrupts? And I understand that, as you said, conceptually, one is a prospective assessment. But you know, again, if I'm someone who wants to decide whether my planned action is covered, how am I supposed to know what tends to disrupt, especially if I've not spent a lot of time in the Capitol? Understood, Your Honor. So I mean, I would point in that context to this Court's similar assessment of a very similar question in Bronstein. And in Bronstein, the Court determined that it was determinable conduct because even though The narration or harangue in the chamber is of the Supreme Court is so much clearer in my view than what you're presenting here. I don't think so, Your Honor, not in the sense of the key interpretive principle that the Court applied in Bronstein and the key phrase the Court applied in Bronstein was to tend to disrupt the Court's operations. So if the question is what would tend to disrupt the Court's operations, I think that is susceptible to the same sort of notice and provides the same sort of notice, especially given that, you know, the case law is clear that when considering vagueness challenges, it's not a unconstitutional infirmity to have an imprecise standard that might be applied differently by reasonable jurists that might even be applied differently by reasonable fact finders. It's only susceptible or it's only infirm unconstitutionally for vagueness if there's no standard at all. And that isn't the case here. So is there an understanding of the term demonstrated within the statute that doesn't depend on tendency to disrupt as the defining feature? And I guess I also relatedly have a question of whether you would apply tending to disrupt individually or to the category of individually to each proposed entry and activity. But the only way you think it's reasonable to read demonstrate in context. We would submit that, again, as a matter of standard statutory interpretive principles, just as this Court applied in Bronstein, based upon surrounding terms, title, and even in this case, if the Court finds it ambiguous looking to the legislative history. Well, I think, Counsel, just on that, another interpretive principle is that when Congress uses a word in one place but not another, we won't read it in. And it strikes me that you are essentially saying that this should be read to say parade, picket, or disorderly demonstrate. That's how you get to tend to disrupt, correct? I don't think so, Your Honor, just because disorderly conduct is a long-standing legal term of art. And so, for instance, it's used in subsection D to refer to a broader category of disorderly conduct. We are reading the word demonstrate in this context, in the context of a statute that, in all of its sub-provisions, describes types of disorderly conduct, even within the same sub-provision, describes inherently types of disorderly conduct like picketing and parading, as reading the term demonstrate to be that are prohibited within the same sub-provision and within the preceding sub-provisions. Okay. I take it the government would not embrace a reading of the statute that understood demonstrate as presenting oneself in a place for the purpose of expressing support or disapproval of an identified action or viewpoint. In other words, another reason to be in the Capitol that is not to visit or meet or tour or otherwise. We would submit that the statute does not encompass that broad a definition of demonstrate. That's our interpretation of the statute. That seems broader to you. Than a demonstration that would tend to disrupt the orderly business of Congress? I would say so, yes. I guess a related question is the conduct at issue in Bynum was a group that was undertaking prayer in the Capitol and they were advised that even silent prayer in statutory hall was not permitted because that was a demonstration. Is that a correct interpretation of the statute of this subsection? The court's reading in Bynum? No, no. If that's what the Capitol police officer told Reverend Bynum and his group, is that a correct interpretation of 5104E2G? So, Your Honor, at this point, I would say no. I mean, the government in this case is embracing Judge Friedman's description of the scope of that statute in Bynum, which he found to be constitutionally sound. What Judge Friedman objected to was the Capitol police regulation that encompassed the silent prayer. And I would note, Your Honor, I know that in the briefing, appellants have relied on current Capitol regulations to argue that they haven't changed, but I would point out that part of the Capitol regulations that have been cited are actually regulations concerning demonstrations that are demonstration activity that is permitted on the ground. So if you look further in the same Capitol police regulations, I think page 859, it actually describes the Bynum decision, describes the holding of the Bynum decision, and advises that demonstrations inside the Capitol don't violate this statute unless they're disruptive. So if we're looking at the Capitol police regulations as informing the likelihood of enforcement, it actually cuts against appellants' claims. Unless they're disruptive or tend to disrupt? I think it just uses the word disruptive. I would point that in Judge Bynum's decision, excuse me, in Judge Friedman's decision in Bynum, he uses the phrase would disrupt. He phrases it as a perspective test, which is the same phrasing that this court used. Again, we would submit an analogous context in Braunstein. It's referred to tending disrupt, threatening to disrupt. That is historically how, for instance, Black's Law Dictionary defines disorderly conduct as tending to violate, to disturb the peace. That's helpful. I had understood Ms. Fussell to make an argument that the government's interest in the anti-parading, picketing, and demonstrating statute is sort of impugned by the fact that the session. What do we make of that? So this applies when Congress is not in session? Yes, Your Honor. Is that reasonable? It's reasonable, Your Honor, because of the other specific narrowing features of this provision as compared to subsection D, which is the broader disorderly and disruptive conduct provision. This provision only applies inside the Capitol building, within the actual building, and also only applies to the particular types of identified disruptive conduct. And as in related cases, the District of Columbia Court of Appeals has recognized and would submit as just a matter of common sense, even when Congress is not holding a specific proceeding or a specific hearing, there is business of Congress being conducted inside the building, inside the offices of Congress people who are meeting with staffers, meeting with other people. The broader provision that applies all the way in the exterior grounds requires a higher showing, requires an intent even to disrupt an active proceeding of Congress, an active session, an active meeting, an active hearing. Counsel, we've understandably focused on the statutory interpretation question, but I understood your briefs to argue, your brief to argue that we actually don't need to resolve the statutory interpretation issue in this case, at least to resolve the First Amendment question. Is that right? That's the government's position? That's correct. And I understand logically and logistically oftentimes that's the first step in this analysis, but we would submit it's not ultimately necessary. And if the Court agrees, then it could affirm simply by saying that under either interpretation, the statute passes constitutional muster. And then just briefly on the vagueness issue, I raised the Holder case. Does the government have a position on whether that bars the claim here? I mean, we haven't briefed that case, Your Honor, so I wouldn't be relying on it here. I would point that we did in our brief. I know it is not an identical concept, but I would say it touches on some of the same concerns. We did cite Hill v. Colorado for the principle that speculation about possible vagueness and hypothetical situations before the Court will not support a facial attack on a statute when it is clearly valid in the majority of its intended applications. And I recognize that's not an identical principle, but we would for somewhat analogous reasons, the vagueness challenge here should fail. For those reasons and for the reasons outlined in our brief, especially with respect to the sentencing claims as well, we would ask that the Court affirm the judgment of the District Court. I'm sorry, Your Honor. I'm sorry. I wanted to ask you if you had a view on the burden on the forum. So, Your Honor, where it's a designated or a limited forum. The broader point that the government has to support a restriction on speech as constitutional is what the government didn't contest. This idea that there's an evidentiary burden on forum, we did dispute in our brief. And in Lederman, it makes very clear that the Court's reference to some sort of evidentiary burden is because the very specific forum at issue there was a sidewalk. And the Court held that there's a strong presumption that a sidewalk is a public forum unless the government has proven otherwise, that there's some specialized use for that sidewalk. There was no indication that that applies elsewhere. Right. So my reading of cases like Stewart v. D.C. Armory, which was incited in the briefing 863 F. 2nd, 1013, is that the forum doctrine does the limited public forum doctrine involves a factual inquiry. And that in that case, we thought that that inquiry needed to be dealt into and that that would be the burden on the challenger of the law. Do you have any reason to think that's not the right analysis? We have no reason to think that that is inaccurate, Your Honor, no. Anything? Thank you. With that, if there are no further questions. Thank you, Your Honor. Ms. Fussell, we'll give you two minutes for rebuttal. Thank you, Your Honors. And I know there's been some question about burden and forum, but I want to reiterate again that our position is that Congress directly targeted and criminalized First Amendment speech in the publicly accessible buildings that make up our seat of government. And we say that that is unconstitutional, regardless of the analysis that applies. I want to address the fact that the government indicated that its positions have been consistent. We ask the court to look again at the Ballinger case. It is extremely an important point, I think, here because when the government is opposing a motion for acquittal or there's a dispute as to sufficiency of the evidence, they say, no, no, no, this doesn't mean disruptive conduct. Even showing up is enough. We don't have to show anything like that. And then when the validity of the statute hangs in the balance, the government says, oh, well, of course disruptive conduct is required or conduct that would tend to disrupt, which I don't know if the court understands the difference between those after the government's argument, but I certainly don't. Now, as the government pointed out, I think the only way to evaluate their standard is that this context-specific standard is with a lot of discretion on the part of the Capitol Police officers. And this isn't in the briefs because this is the first time that the government has indicated that the Capitol Police wouldn't enforce their regulation as written, and they brought up the fact that Bynum was mentioned, and it was in the Capitol Police regulations in a summary of constitutional challenges at the end. But this past June, the Capitol Police stopped a group of children from singing the national anthem in the by a member of Congress was a prohibited demonstration. To quote the Capitol Police's official statement on the matter, here is the truth. Demonstrations are not allowed in the U.S. Capitol. I submit that respectfully that whatever instruction the government has really advanced today, that's the truth. Demonstrations are not allowed in the U.S. Capitol, no matter how peaceful, quiet, or vital to our self-government they are. Thank you, Ms. Fussell. The case is submitted. Thank you, Your Honor.
judges: Pillard, Wilkins, Garcia